Thank you. Good morning. My name is Steve Teich. I represent defendant-appellant Baldemar Landa. We're here today to discuss the implications of the infraction of driving with a .05 alcohol as it severely impacts on his prison sentence, which will be increased by two and a half years as a result of this. Usually criminal history is affected by the individual's prior convictions, but in this case there's a boomerang effect, which the denial of the safety valve has a particularly significant effect. Before we get to the alcohol issue, can you explain to me why, since he didn't debrief, that he's even eligible for a safety valve consideration? Well, we had studied the law on that, and we spoke to Judge Fogel on that, and based on the Mejia case and the assurances that Judge Fogel viewed this as an open question, that if he agreed that the safety valve would be appropriate in not giving a criminal history point, then he would allow the debriefing. And he also is of the opinion that if we went up to the court of appeal and the court of appeal agreed, if he had ultimately given a point, then we would be given the opportunity. In the Mejia case, that's exactly what happened with Judge Tanner up in Seattle. Well, it was slightly different from that, wasn't it? I mean, in the Tanner case we had three different – actually four, I think, because we reversed it the fourth time – resentencings. And I guess the problem I'm having with your explanation is, by what authority does the district judge ignore the five-step safety valve approach that Congress has decreed in connection with whether or not a defendant is eligible for a safety valve? Obviously, the district judge can depart to the extent he can any way he sees fit, but safety valve is a congressional statute. Sure. If this court did rule or does rule that Judge Fogle was incorrect in giving a criminal history point and would then say he was incorrect, it would then send it back for resentencing under – I think it's 3742G. And at that point, under that statute, it's an open question, and he would retain the authority to resentence openly as to what would be appropriate. The classification specifically indexed as to how this should be viewed is the common-sense approach. This particular issue has not been ruled upon by any court that we've seen so far. And under this new statute, strike that this new framework under the sentencing guidelines, the courts are directed in a way to how to approach it. And we did bring this up in front of Judge Fogle, and he didn't apply any of those issues. We saw that the punishments for the offense being an infraction was similar to an offense involving a juvenile. It's only an infraction. Well, your client wasn't a juvenile, though, was he? He was 18 and, what, 34 days or something at the time of his arrest. Yes. So he doesn't have the status of a juvenile offender. No. He is an underage drinker, and he drove an automobile while under the influence. And it was, what, a .086, which, I mean, it could have been charged with just regular DUI, couldn't he, in this State? The Court raises two points. First of all, the .86 was specifically not allowed by Judge Fogle, and that, unless there has been a discretionary ruling that he was incorrect, the Court should, under the previous authority, should exclude that. That's really not in the record. Secondly, PAS tests under the California law, and that's the Jennings and Coniglio decision, is not an accurate test for blood alcohol level. All it is is a level. All it shows is that there is a presence, not what the standard is. So there really is no foundation laid to that. There's no showing that those tests were reliable, nor are they admissible. So in that respect, Judge Fogle was quite correct in not allowing them before the Court. There was never a... How do we retry the question of whether he should have been bound to offend it under California law? We don't retry that. Absolutely not. We're just talking about the admissibility of the PAS test, which Judge Tolman had indicated was something to look at. The issue would be, had Judge Fogle admitted it, I mean, he was over the 8 point, the .8, which would make him DUI no matter what, but he wasn't convicted for .8. He was convicted for .5, which is the, I'll call it the under 21 drinking deal. But how can it be like a juvenile status offense if he's not a juvenile? Because... I think three other circuits have now said that one of the elements of being like a juvenile status offense is to be a juvenile. Otherwise, it can't be a juvenile status offense. Well, the Cole decision really addresses that, and the guidelines are trying to avoid an overly, well, technical view. They said similar to, and Cole specifically said, Cole was over 19 at the time that he had possession of the alcohol, and they said it's similar to a juvenile offense. And he was 34 days past his 18th birthday, and a very technical application if these, if this Court felt he would otherwise be qualified to give him 2-1-2 years because of 34 days past his 18th birthday. Well, that isn't the issue, though. The issue, you're arguing it's a status offense. The problem is he doesn't have the status of a juvenile offender. So now we're back to the is similar to, and why isn't driving an automobile under the influence of .05 similar to driving under the influence or driving while intoxicated statute? .05 in California is not, there's no presumption that he's under the influence. All it says is he's driving with a .05, and there's no requirement that he be under the influence. Well, under the influence, it could mean different things. Under the influence could mean the statutory definition, or it could mean under the influence, and, of course, there are different levels of influence. And, of course, in the California vocabulary, DUI is the 8. But the 5, I mean, if we're just talking sort of ordinary talk rather than statutory talk, there's some influence. Well, there is no presumption. You know, it's sort of. But that's an evidentiary presumption. And I agree with you. You don't get, the State doesn't get the evidentiary presumption because if we ignore the PAS test, then he wasn't .08 or above. But they could still convict him of driving while intoxicated if they could show other conduct at the time he was driving, could they not, and also show that he was under the influence. Had there been a record where this was sufficient facts that you could, then under perhaps like the Ward decision, yes, you might make that finding, but there are no facts. You're left with just the statute. But you're asking us to make law applying a common sense analysis, and I'm trying to determine where common sense went here. Well, 23-140 is part of the statute of the juvenile driving with alcohol. Well, it reflects, does it not, a legislative choice that when a person under the age of 21 consumes alcohol, they are more dangerous as drivers because it takes less alcohol to produce the kinds of effects that we might not otherwise see unless the person, if he were an adult, had consumed significantly more. It's, I would beg, that's true. Well, I beg to differ. It's more of the status offense, like a 23-136, which is a zero tolerance of any alcohol in the system, is also punished the same way as an infraction. Would the legislature make a finding with regard to 23-140 that it was trying to address the safety issue of, I'll call them less experienced drinkers getting behind the wheel of a car? Sure. But they're saying you can't have any alcohol in your system and get behind a wheel no matter what. But that is not the same as driving under the influence, and therefore it's a pure status offense. I'd like to reserve whatever's left of the mic. Good morning, Your Honors. May it please the Court. My name is Mary Jean Chan, and I represent the United States in this appeal. The district court correctly found that the defendant's criminal history category disqualified him for consideration for safety valve eligibility, safety valve relief. First of all, it's plain from the terms of the statute at issue in this case California Vehicle Code 23-140A that its point is to prohibit driving under the influence, and it fits within the driving under the influence that's talked about in Application Note 5 to the Sentencing Guidelines, Section 4A1.2. The very plain terms of the statute state that it is, quote, unlawful for a person under the age of 21 years who has 0.05% or more by weight of alcohol in his or her life to be driving. It's plain under the use of common sense or what this Court in the case U.S. v. Thornton called, quote, inherent logic, that this is the kind of offense that the Sentencing Guidelines say has to qualify or has to count towards the defendant's criminal history, regardless of whatever superficial similarities there might be to an offense otherwise listed as exempt in Subsection C-2. Would you be making the same argument if at the time of the offense he was 17 1⁄2? Yes, Your Honor, because it's not a juvenile status offense. It's still a – it's, of course, important to note that he was not a juvenile at the time, nor that the statute only addresses juveniles, because it also, you know, it also addresses people who are between 18 and 21. But the essence of a juvenile status offense is an offense that criminalizes otherwise – behavior that would otherwise be non-criminal. It would be per se legal, but for the fact that somebody has not hit the age of 18 yet. That's not the kind of behavior that's targeted. That's not the conduct that's targeted by this statute. 23-148. What if he were 15 at the time of the offense? Again, it's not per se. So if somebody is caught driving a car at age 15 and is convicted under this .05 statute, you would count that as a point with respect to the safety valve? I believe so, Your Honor, because it's not – or at least it's certainly not a juvenile status offense. For example, if somebody were 15 and they committed murder, that would not qualify as a juvenile status offense, even though he's a juvenile at the time. The juvenile status offenses are exempted under subsection C-2 for a specific  Okay. Now, I realize these are hypotheticals. Yes. And they may end up making no difference to me as I decide the actual case in front of me. Yes, Your Honor. But I'll come back to the phrase that Judge Tallman invoked. At some point, common sense tells me that a 15-year-old with .05, that that's a juvenile status offense. Your Honor, I simply disagree. Okay. Well, we don't need to go too far because that's not our case. Okay. Okay. Thank you, Your Honor. But I think common sense in this case, when you look simply at the statute, it clearly fits within the rubric of a driving under the influence statute. So the status is a driver who has alcohol in his system while driving. That's the status that the law punishes, right? I suppose that's true. That's a conduct, though. It's driving with alcohol coursing through your veins. So it's status, but it's not juvenile status offense. It's not juvenile status. It's a status of a driver while intoxicated. Right. And I would argue that it's not even really a status that is being punished. It's an action. It's a conduct, which is the driving. It's not simply baying somebody who's standing there, you know, with alcohol in your system. It's actually taking another step, which is not only having alcohol in your system, which in this case, because he was under 21, was illegal by itself, but also taking the action of then getting in a car and driving, which endangers the public and is one of the reasons why the sentencing guidelines, Congress, certainly California legislature, have exempted and taken this category of offenses out and said no matter what else happens, if it's a driving under the influence offense, it counts towards the defendant's criminal history. Now, the court in this case, sorry, the court in Thornton also looked at the statutory scheme for support for its conclusion that in that case, the statute, which prohibits driving with a .08 percent or higher blood alcohol concentration, was similar to driving under the influence. And the same type of statutory factors also apply in this case to California Vehicle Code 23-140A. First, subsection B of the statute explicitly prohibits driving while under the influence if you're under 21. That is subject to the same penalties as subsection A, which is the statute that we're talking about today. Secondly, the subsection of A that we're talking about in this case now prohibits not just driving with a blood alcohol concentration of .05 percent, but .05 percent or more. And that encompasses .08 percent or more. And there's a legislative finding or there's a legislative determination that for evidentiary purposes at trial, .08 percent blood alcohol concentration is presumed to be impairment or evidence of impairment. And in fact, the legislature has also said that a blood alcohol concentration of .05 percent to .08 percent is also evidence of driving under impairment of alcohol. So while there isn't a presumption, it's still considered to be evidence. Finally, the California Code also groups 23-140A, 23-140, the statute at issue here, with 23-152, which this court in Thornton found counted towards a defendant's criminal history because it is similar to driving under the influence. Now, it's absolutely not like a juvenile status offense. And we've talked about, you know, first, he's not a juvenile. He was over the age of 18 at the time. The statute doesn't simply apply to juveniles. It applies to anyone under 21, including adults who are between 18 and 21. And it also does not target only conduct that is per se legal but for the age. It's talking about conduct that actually would per se be legal, but oftentimes is not, even for adults. Under a different statute, it would be illegal. I mean, that is to say someone driving at .05 who's 22 is not illegal. Well, but by itself, it doesn't define necessarily legal conduct because somebody who's driving .05 who's 22 could also be if they're driving under impairment or under the influence. Right. But then you added a fact that's not present here. We don't know that one way or the other. All we know is the blood alcohol content. That's true, Your Honor. And I think one of the factors – but, again, I want to go back to the fact that the statute targets blood alcohol concentrations of .05 percent or more, not simply .05, between .05 and .08. And in this case, while the district court, it's true, didn't necessarily consider the factor, he could have because, you know, the district courts in the Federal proceedings, certainly at sentencing, have latitude to consider different evidence for sentencing, could have considered the fact that his two breathalyzer tests showed that he had blood alcohol levels of .086 and .087. So that would be illegal. I'm not sure he could have. He certainly did not. He certainly did not, Your Honor. Very explicitly did not. He did not, Your Honor. And I'd also like to talk about the second basis for the district court's criminal history finding, which was that under subsection C1 of the sentencing guidelines for A1.2, petty offenses, even petty offenses, even infractions, where they have a sentence of probation that's over a year, those count towards the defendant's criminal history. And there's no question here that the defendant's sentence in this case was initially 18 months, and he served over a year of that, so it counts for that reason as well. I'd also like to return to the question that Judge Tallman raised during the opening argument, which was whether it's actually harmless. And, yes, it is actually harmless. The district court made no accommodations to the defendant other than a promise that if the district court were to find that his criminal history point was only one, and so that for that reason he was eligible or that was not a prohibition towards safety valve relief, that he would then open the sentencing or continue the sentencing to give him the opportunity to brief. He might not even take that opportunity. But that was the sole accommodation. On page 4 of the transcript at the plea colloquy, this was before the sentencing, the Court specifically said, but other than that one accommodation, the Court is not promising – is promising nothing, including that it's not promising it would impose a safety valve sentencing in any case. Later on page 15, the Court said if the Court determines it the other way, in other words, it says actually this guy is not eligible, this guy has too many prior convictions or whatever, then the government is going to make the argument, if you appeal that, that you wouldn't have been eligible anyway because you didn't debrief. And then on page 17, the Court specifically told the defendant that the important thing is that Mr. Landa understand that there is a risk that you could lose all the way around here. There is a worst-case scenario that would result in your getting a five-year sentence or more and not having a right to appeal that determination. Well, you've got the right to appeal, but it may not be something the Court of Appeals would agree with. So it's absolutely incorrect to state that he was given an assurance that if the district court were to rule against him on the criminal history point, that he might be able to go up to the Court of Appeals and not have the fact that he failed to debrief, he failed to comply with Factor 5 under 3553F for safety valve relief, that that would not be something that would prohibit him from obtaining relief. I'm not sure it's going to make much difference to the outcome, but I have to say I read the transcript on the debriefing quite differently. As I read Judge Fogel, he says, if I'm wrong as to the juvenile status offense, he will have an opportunity to debrief. I just read the transcript differently. Well, I understand that, Your Honor, but I would also point you again to the plea colloquy, those pages that I just cited for the team evidence. And I heard every word you recited and I read it previously, and I don't think they're inconsistent with the promise that Judge Fogel made. Well, Your Honor, I understand that. But again, for the reasons I've stated, for the statutory reasons, I would ask this Court to affirm the sentence. Thank you very much. Thank you. Response? Thank you. We've asserted and continue to assert that this is a driving with alcohol in the system which is legal for adults, is only legal because the person was under 21. It's part of the laws regarding zero tolerance. 23-136 and 23-140 passed in 1994 say that juveniles 21 years and under may not drive with alcohol in their bloodstream. Nothing to do with ---- A person between the ages of 18 and 21 is not a juvenile. No. But anyone under 21 under these statutes may not drive with any alcohol at all in their system. But you're trying to hang on to the status of a juvenile without a juvenile offender. I just don't understand how we get there. Similar. It's similar to an offense, and that's the specific finding of Cole and Johnston, that if he's a few days over his 18th birthday, he doesn't automatically lose it because they said similar to. If they didn't say similar to, I would agree with the Court. But isn't it similar? But the similar to applies to the conduct, not to the status. You're trying to squeeze it into both. With due respect, Cole made that specific finding that said, had any courts had looked at it, it's similar to. Cole was 19, and they found out that they said if he was under 18, it would be illegal. And since it was 19 and the drinking age was 21, it was similar to a status offense. I mean, whatever that's like. Can you answer the question that Judge Fletcher was posing to the prosecutor at the end of her presentation? As I read the transcript at 21, the government says we were willing to debrief, but your client didn't want to, and he made that choice. I mean, he basically chose to roll the dice, did he not? That if either we give him the, take the point away, in which case he might, or if we don't give him or if we uphold the extra point, he's not going to debrief. And should we reward that kind of behavior? It has nothing to do with that. It's not rewarding. It's that if you go to prison having debriefed, it's the same as cooperating. I understand why he doesn't want to do it. But the question is, should we reward? And I'm looking specifically at the colloquy at the bottom of 21 and the top of 22 of the sentencing transcript. It seems to me that it's bad policy to encourage clients like yours to sort of roll the dice, that, you know, maybe I've got a good legal issue here. If I lose on this one, then I'll try on the second time around to go back and debrief. And the question is, should we write an opinion that says, yeah, there's nothing wrong with that? Well, I think the court need view the law as we did and say, you follow or make or decide the law. And if you say you're wrong, that is the – But Congress is pretty clear. I mean, there's five things you've got to do in order to be entitled to safety valve. And you've got to do it before the time of sentencing. And he didn't do step five. He didn't debrief. But if the court agrees with us, we would hope the court would remand it back and said that Judge Fogel made a mistake and that you shouldn't have counted. And Judge Fogel, according to 3724, it opens it up. You have a much more sympathetic argument if you debrief. Then we could simply say Judge Fogel made a mistake at step three. We'll correct that mistake now. He goes back and he gets the benefit of the decision. Well, flip it around. If he went and debriefed and the court said no, you're wrong. Well, I understand what his motive is. I'm looking at what the law requires him to do, and he didn't do it. We make our best decisions that we can. We hope the court agrees with our decision. Thank you, Your Honor. Thank you very much. Thank you both sides. United States v. Landa is now submitted for decision.
judges: Fernandez, Fletcher W. , Tallman